1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   JULIANNA AGARDI,                           No. C 14-0347 MMC

12            Plaintiff,                        **ORDER GRANTING DEFENDANT'S
                                                MOTION TO DISMISS**
13       v.

14   HYATT HOTELS CORPORATION,

15            Defendant.
     _____/

16

17       Before the Court is defendant Hyatt Corporation's ("Hyatt") "Motion (1) to Dismiss

18   the Complaint under 28 U.S.C. § 1915(e)(2)(B); (2) to Dismiss the Complaint under FRCP

19   12(b)(6), and/or (3) for a More Definite Statement," filed April 1, 2014.  Pursuant to the Civil

20   Local Rules of this District, opposition was due no later than April 15, 2014.  See Civil L. R.

21   7-3(a) (providing opposition to motion must be filed and served no later than 14 days after

22   the motion is filed and served).  To date, no opposition has been filed.  Having read and

23   considered the papers filed in support of the motion, the Court rules as follows.[1]

24                                      **BACKGROUND**

25       On January 23, 2014, Julianna Agardi ("Agardi") filed the instant action.  In her

26   complaint, Agardi alleges that, in 2003, after she had reported her supervisor, Stephane

27

28       [1] By order filed May 9, 2014, the Court deemed the matter suitable for decision on
     the moving papers and vacated the hearing re-noticed for May 16, 2014.

**United States District Court**

**For the Northern District of California**

1   Voitzwinkler ("Voitzwinkler"), for sexual harassment, she was fired from her job at the

2   Manchester Grand Hyatt Hotel on the asserted ground that she lied about the matter she

3   reported.  (See Compl. at 10:3-12; 11:19-20.)  According to Agardi, "Hyatt took

4   Voitzwinkler's side," and, after firing her, "set out to prove that [she] was a liar and will

5   remain a liar."  (See id. at 11:2-5, 11:19-20.)

6        Agardi alleges Hyatt, with the assistance of the City and County of San Francisco,[2]

7   set out to accomplish this goal by "establish[ing] a parallel websearch and image search

8   system on the Internet" (see id. at 17:10-11, 17:18-19), and, in particular, by using

9   "programming devices such as frames, scripts[,] . . . webcrawlers and sniffers . . . to gain

10  access to [her] email account and other computer files" and by "successfully execut[ing] its

11  intention to devise and execute a scheme or artifice to deceive and wrongfully control data

12  in [her] email account to further its purpose to create false evidence about [her] person,

13  lifestyle, gain knowledge of her personal habits, her friends and private life" (id. at 17:11-

14  16).

15       Agardi alleges Hyatt, by reason of such access, "hacked up [her] resume and her

16  computer files including her word documents containing her legal pleadings and research,

17  including her private writings" (see id. at 8:2-3), which it then used in 2006 to have her fired

18  from her new employment at NCPHS Sequoias ("the Sequoias"), by writing the Sequoias a

19  letter purporting to be "from Sacramento from the overseeing government agency, stating

20  that [p]laintiff had additional criminal records" (see id. at 13:27-29; 14:14).  Agardi alleges

21  that Hyatt previously had "arranged that [she] would receive the type of job in which

22  disclosure of criminal records were a condition."  (See id. at 14:16-17.)

23       Agardi further alleges that, although Voitzwinkler, as of 2004, was no longer

24  employed by Hyatt, he and Hyatt "continued to hack together, and laid the ground work

25

26       [2] Agardi alleges the "City & County of San Francisco provided [Hyatt] administratorial
    access and control to its computer systems, networks, and the rest," and, consequently,
27  that Hyatt was able to use the "public computer system in San Francisco County," which
    Agardi used, "to gain access to [her] email account and other computer files."  (See Compl.
28  at 17:12-24.)

[sic] for manufacturing evidence of alleged sexual activity by [p]laintiff." (<u>See</u> <u>id.</u> at 8:25-30.)  In particular, Agardi alleges, Hyatt, in connection with its attempt to defame her sexual character, is responsible for the appearance on various pornographic websites of women who share her first name (<u>see</u> <u>id.</u> at 8:27-30; 27:25-28:1), as well as for her receipt of "hundreds" (<u>id.</u> at 25:27-29; 29:16-23) and "thousands" (<u>id.</u> at 13:4-7) of spam emails containing explicit sexual material and for a "redirect virus" she encountered when trying to access her email (<u>see</u> <u>id.</u> at 22:13-15).  Agardi alleges such events are "part of a campaign to place [her] in the false light of engaging in some sort of sexual activity and discussion and looking at pornography on the Internet, as a prerequisite to discredit her as a potential witness" against Hyatt in a future lawsuit.  (<u>See</u> <u>id.</u> at 26:3-6.)

Agardi alleges that Hyatt presently "control[s] [her] email and is in the position to prevent employment in the future" (<u>see</u> <u>id.</u> at 10:26-27), that "no one can send emails to [her] without going passed by [sic] the Hyatt's checkpoints" (<u>see</u> <u>id.</u> at 16:1-2), that counsel for Hyatt "linked [Hyatt's counsel's] email to [her] email accounts" such that "every time [she] sent an email[,] [Hyatt's counsel] got the copy of it as well" (<u>see</u> <u>id.</u> at 17:27-28), that counsel for Hyatt "forced [her] to reset her [email] password, and denied access to existing email accounts . . . by switching the secret questions over to something that [she] does not remember" (<u>see</u> <u>id.</u> at 18:22-25), and that her "email account is hooked up to a Media Player that controls, and alert[s] the defendant every time [she] comes on line" (<u>see</u> <u>id.</u> at 21:8-9).

Based on the above, Agardi brings the following thirteen claims: "Violation of Restatement (Second) of Torts § 870 Public Policy Tort" (First Claim); "Violation of Prima Facie Tort Liability Based on Intent to Harm Regardless of Public Policy" (Second Claim); "Violation of Restatement (Second) of Torts § 575 cmt. b Defamation" (Third Claim); "Violation of Second of Torts § 766 B Interference with Economic Relations Intentional Interference with Prospective Advantage" (Fourth Claim); "Violation of Interference with Private Conduct" (Fifth Claim); "Violation of the Comprehensive Computer Data Access and Fraud Act (Pen C § 502) (a) (c) Under State Law" (Sixth Claim); "Violation of the ECPA

1  Accessing Computer Files Without Authorization: Wiretap Act"/"Stored Communications

2  Act" (Seventh Claim); "Violation of Bus & PC § 17500 § 17538 California's Online Privacy

3  Protection Act of 2003. Bus & P.C §§ 22579. California's Unfair Competition Act (UCL) Bus

4  & PC § 17200-17210 CC § 334 Advertising on the Internet" (Eighth Claim); "Violation of the

5  Restatement (Second) of Torts 652 Intentional Infliction of Emotional Distress" (Ninth

6  Claim); "Violation of Right of Publicity! under CC § 3344" (Tenth Claim); "Violation of CAN

7  SPAM Act 15 USC §§ 7701-7713" (Eleventh Claim); "Violation of Pen C § 528.5 (a)

8  Impersonating Another Person on the Internet" (Twelfth Claim); "Violation of Right of

9  Publicity! under CC § 3344" (Thirteenth Claim).[3]

10  **LEGAL STANDARD**

11  Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based

12  on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

13  cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

14  1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim

15  showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S.

16  544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by

17  a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.

18  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief

19  requires more than labels and conclusions, and a formulaic recitation of the elements of a

20  cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

21  In analyzing a motion to dismiss, a district court must accept as true all material

22  allegations in the complaint, and construe them in the light most favorable to the

23  nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

24  "To survive a motion to dismiss, a complaint must contain sufficient factual material,

25  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

26  556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must

27

28  _____

[3] The Tenth and Thirteenth Claims are essentially duplicative of one another.

1  be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at

2  555.  Courts "are not bound to accept as true a legal conclusion couched as a factual

3  allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

4

5      **A.      Standing**

6          Defendant argues Agardi lacks standing to bring her Eleventh Claim.  The Court

7  agrees.  The CAN-SPAM Act does not afford a private right of action to consumers

8  generally, but only to "a provider of Internet access service."  See Gordon v. Virtumundo,

9  Inc., 575 F.3d 1040, 1048 (9th Cir. 2009) (quoting 15 U.S.C. § 7706(g)(1)); see also id. at

10  1049-50 (finding "Congress conferred standing only on a narrow group of possible plaintiffs:

11  the Federal Trade Commission, certain state and federal agencies, state attorneys general,

12  and [Internet access service] providers").

13          Accordingly, the Eleventh Claim is subject to dismissal.

14      **B.      Statute of Limitations**

15          Defendant argues Agardi's claims, to the extent such claims are based on Agardi's

16  2003 termination by Hyatt and her 2006 termination by the Sequoias are barred by the

17  applicable statutes of limitations.  Again, the Court agrees.

18          Agardi's First, Second, Fourth, Fifth, Seventh, Ninth, Tenth, and Thirteenth Claims

19  are all subject to a two-year statute of limitations, see Cal. Code Civ. Proc. § 335.1

20  (personal injury caused by wrongful act or neglect); id. § 339 (breach of oral contract); 18

21  U.S.C. § 2520(e) (Wiretap Act); id. § 2707(f) (Stored Communications Act); her Third Claim

22  is subject to a one-year statute of limitations, see Cal. Code Civ. Proc. § 340(c) (libel,

23  slander); her Sixth Claim, which is brought under two separate statutes, is subject to both a

24  two-year and a three-year statute of limitations, see 18 U.S.C. § 1030(g) (Computer Fraud

25  and Abuse Act); Cal. Penal Code § 502(e)(5) (Comprehensive Computer Data Access and

26  Fraud Act); and her Eighth Claim is subject to a four-year statute of limitations, see Cal.

27  Bus. Prof. Code § 17208 (California Unfair Competition Act).

28          Under both state and federal law, claims alleging an unlawful termination are

5

considered to accrue when the employee is terminated.  See Romano v. Rockwell Internat., Inc., 14 Cal.4th 479, 501 (1996) (holding cause of action for termination in violation of public policy accrues at time of dismissal); Coppinger-Martin v. Solis, 627 F.3d 745, 749 (9th Cir. 2010) (holding claim alleging termination in retaliation for whistleblowing accrues when plaintiff "learns of the actual injury, i.e., an adverse employment action, and not when the plaintiff suspects a legal wrong, i.e., that the employer acted with discriminatory intent" (internal quotations and citation omitted)).  Because Agardi's claims arising from the two terminations accrued in 2003 and 2006, respectively, and her complaint in the instant action was not filed until January 23, 2014, such claims are barred by the above-referenced statutes of limitations.

Indeed, with respect to each such termination, Agardi has already filed a lawsuit within the period of limitations, the first in federal court, and the second in state court.  (See Defendant Hyatt Corporation's Request for Judicial Notice ("RJN") Ex. 1 at 4, 5 ("Complaint of Violations of Civil Rights," filed June 21, 2004) (alleging sexual harassment by supervisor, retaliatory termination by Hyatt, and damages);[4] RJN Ex. 7 ("Complaint and Summons for Wrongful Discharge," filed Nov. 7, 2006) at 43:26-33 (alleging plaintiff was fired by the Sequoias because "Hyatt and its satellites hack[ed] plaintiff's email and followed the conversations between the Sequoias and plaintiff about a possible work relationship" and "induced [the Sequoias] to set plaintiff up for termination" through "falsification of her [criminal] records").)[5]

---

[4] In support of its motion to dismiss, Hyatt requests the Court take judicial notice of a number of documents, all constituting federal and state court filings.  A court may "take judicial notice of matters of public record outside the pleadings and consider them for purposes of [a] motion to dismiss."  Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988) (internal quotation and citation omitted).  Accordingly, each such request is hereby GRANTED.

[5] The Court notes that, to the extent based on the two terminations, Agardi's present claims are time-barred even if the pendency of Agardi's prior lawsuits served to toll the applicable statutes of limitations, as the time elapsing between the termination of those cases and the filing of the instant action, six years and eight years, respectively, substantially exceeds any applicable limitations period.  See Addison v. State of California, 21 Cal. 3d 313, 316 (1978) (holding limitations period "suspended during the period in which plaintiffs' claims were pending in [other] tribunal"); (see also RJN Ex. 6

1   Accordingly, to the extent Agardi's claims are based on her 2003 termination by

2   Hyatt and her 2006 termination by the Sequoias, or on any acts by Hyatt alleged to have

3   contributed thereto, such claims are subject to dismissal.

4   **C.   Claims Not Barred By Statute of Limitations**

5   As noted, in order for a complaint to survive a motion to dismiss, the claims

6   contained therein must be "plausible." See Iqbal, 129 S. Ct. 1949 (holding complaint "must

7   contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

8   on its face"; further holding "[a] claim has facial plausibility when the plaintiff pleads factual

9   content that allows the court to draw the reasonable inference that the defendant is liable

10  for the misconduct alleged").  Hyatt argues Agardi's remaining claims, even if not time-

11  barred, fail to plead plausible claims for relief.  As set forth below, the Court agrees.

12  The balance of Agardi's complaint describes the numerous pornographic emails,

13  other spam emails, and unwanted Internet advertisements received by Agardi,[6] all of which

14  she attributes to Hyatt, which defendant, as noted, Agardi alleges controls and monitors her

15  email.[7]

16  Of the many facts alleged in Agardi's complaint, only three even arguably link Hyatt

17  to Agardi's receipt of such transmissions: (1) the sender of one of the numerous spam

18  emails she received has the same first name as her former supervisor from Hyatt (see

19  Compl. at 8:10-13); (2) an attorney at the law firm currently representing Hyatt sent Agardi

20  an email "[w]ith links to WebMD" (see id. at 28:21-23); and (3) her 2003 report of sexual

21  harassment (see id. at 11:1-5).

22  The above-referenced two emails fall far short of rendering it plausible that Hyatt is

23  _____

24  ("Memorandum," filed Feb. 22, 2006) (affirming judgment in favor of Hyatt and against
    Agardi in 2004 federal lawsuit); RJN Ex. 10 (Order, filed May 27, 2008) (affirming dismissal
25  of Agardi's 2006 state court lawsuit)).

26  [6] Agardi provides dates for only a few of such transmissions, all occurring in 2012.
    For purposes of the present order, the Court assumes any allegations not clearly time-
27  barred are based on events occurring within the applicable limitations period.

28  [7] As noted, Agardi also seeks to hold Hyatt liable for pornographic images of other
    women named "Julianna" that Agardi has come across while surfing the Internet.

1   responsible for the large numbers of pornographic and other unsolicited emails and

2   advertisements Agardi alleges she received and continues to receive, much less that Hyatt

3   is in control of her email.  See Twombly, 550 U.S. at 564-65 (finding complaint's

4   "sufficiency turns on the suggestions raised by [the alleged] conduct when viewed in light of

5   common . . . experience").

6          Nor does Agardi's allegation of her 2003 report of sexual harassment suffice to

7   support her allegation of Hyatt's retaliatory motivation for the alleged Internet transmissions

8   she received years later.  Cf. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th

9   Cir. 2002) (holding, in context of Title VII claim, "in order to support an inference of

10  retaliatory motive, the [adverse employment action] must have occurred fairly soon after

11  the employee's protected expression"; finding "nearly 18-month lapse between protected

12  activity and an adverse employment action" too long to give rise to inference of causation).

13         Accordingly, Agardi's remaining claims are subject to dismissal.

14         **D.     Leave to Amend**

15         As noted, Agardi has not filed opposition to Hyatt's motion, let alone requested leave

16  to amend.  Nevertheless, where a district court dismisses a complaint for failure to state a

17  claim, the court ordinarily "should grant leave to amend . . . unless it determines that the

18  pleading could not possibly be cured by the allegation of other facts."  See Cook, Perkiss

19  and Liehe, Inc. v. Northern Cal. Collection Serv., Inc., 911 F.2d 242, 247 (9th Cir. 1990).

20  The Court thus considers the question of whether leave to amend is appropriate in this

21  instance.

22         As discussed above, Agardi's Eleventh Claim, violation of the CAN-SPAM Act, fails

23  as a matter of law for lack of standing, and, consequently, leave to amend would be futile.

24  Similarly, to the extent Agardi's claims are based on her terminations by Hyatt and the

25  Sequoias, amendment would be futile; as discussed above, the record clearly

26  demonstrates those claims are time-barred.  Turning to Agardi's remaining claims, the

27  Court likewise finds leave to amend would be futile.  Agardi's complaint, which consists of

28  thirty-one, single-spaced pages, is not lacking in facts.  Rather, the complaint sets forth, in

great detail, all of the facts on which Agardi relies to hold Hyatt responsible for the Internet transmissions on which her claims are based.  Those allegations, however, whether considered individually or collectively, fail to support a plausible claim, and there is no indication that any other facts exist to cure that deficiency.[8]

### CONCLUSION

For the reasons stated above, defendant's motion to dismiss is hereby GRANTED, and plaintiff's complaint is hereby DISMISSED without leave to amend.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 23, 2014

MAXINE M. CHESNEY
United States District Judge

_____

[8] Indeed, a recent filing by Agardi confirms that her claims against Hyatt are fatally deficient.  In particular, on June 2, 2014, subsequent to the Court's taking the instant motion to dismiss under submission, Agardi filed a motion for summary judgment, to which she attaches ten exhibits comprising 418 pages of computer printouts from her email account and various websites, including websites maintained by Hyatt, Wikipedia, TripAdvisor, WedMD, LinkedIn, and Google Maps, as well as an assortment of pornographic and other websites.  Despite its volume, none of the proffered material in any way substantiates Agardi's theory of liability.

9